

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:21-MJ-417-BP |
| JOSE ANTONIO SANTOYO-HAROS (01) | |

### CRIMINAL COMPLAINT

I, Special Agent Sheldon Jones, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**Alleged Offense:**

On or about May 27, 2021, in the Fort Worth Division of the Northern District of Texas, **JOSE SANTOYO-HAROS** did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

**Probable Cause:**

I, Sheldon Jones, under oath, duly state that I am a Special Agent (SA) with Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). The statements set forth in this affidavit are the product of my personal observations, training, and experience, as well as information obtained from other law enforcement Officers and witnesses. Moreover, the facts presented are true and correct to the best of my knowledge and belief but are not inclusive of all the evidence or information involved with this case.

### Controlled Purchase of Cocaine #1 on January 15, 2021

1. In January 2021, HSI Special Agents (SAs) Sheldon Jones and Rudy Lara met with a confidential informant (CI) at a predetermined location in reference to making a consensual recorded phone call. SA-676-DA made a consensual recorded phone call to **HAROS** at xxx-xx-1720.

2. SA Lara overheard the conversation in the Spanish language and explained the conversation between the CI and **HAROS**. The CI arranged to meet with **HAROS** later for the purchase of one (1) ounce of cocaine.

3. On or about January 15, 2021, HSI, with the assistance of the FWPD Gang Unit, FWPD Narcotics Units, Alcohol, Tobacco and Firearms (ATF) and the Drug Enforcement Administration (DEA) conducted a controlled purchase of one (1) ounce of cocaine from **HAROS**.

4. SAs Sheldon Jones and Rudy Lara met the CI at a predetermined location to conduct a consensual recorded phone call to **HAROS** at xxx-xx-1720. Prior to making the consensual phone call, agents searched CI's person and vehicle for contraband and/or weapons. The search was negative on both.

5. A few moments later, the CI was given a recording device and instructed to make a phone call to **HAROS** at xxx-xx-1720. The CI attempted to make two (2) phone calls to the target number and got negative results. The CI was instructed to make another consensually monitored phone call and **HAROS** answered the phone. The CI told **HAROS** that his friend wanted to purchase one (1) ounce of cocaine. **HAROS** said that it would be $1,300.00 for an ounce of cocaine. Furthermore, **HAROS** stated that he was eating and would call CI after his finished his meal.

6. During the conducted purchase, agents were conducting surveillance at **HAROS'** residence and a car dealership known as the "Car Plug," located on N. Main in Fort Worth, Texas (believed to be **HAROS'** work address). The CI made another consensually monitored phone call to the target phone and **HAROS** set the meeting location as the 3300 block of N. Grove Street, Fort Worth, Texas. The CI was given a video/recording device on his person prior to leaving the predetermined location. A few minutes later, officers observed a Hispanic male wearing all black exit **HAROS'** residence and get into a light brown colored older model Ford Mustang.

7. A few moments later, agents observed the Ford Mustang arrive at the 3300 block of N. Grove Street. The CI arrived and conducted the controlled purchase of the cocaine with **HAROS**. A few minutes later, agents observed the Ford Mustang leaving N. Grove Street without incident.

8. Agents/officers started following the Ford Mustang that was identified by the CI as the vehicle that the drug supplier was driving. The Ford Mustang drove back to **HAROS'** residence.

9. SAs Jones and Lara followed the CI back to a predetermined location where the CI relinquished a clear baggie of a white, rock like substance suspected to be cocaine. The CI's person and vehicle were both searched for contraband and weapons. The results were negative on both.

**Criminal Complaint – Page 2**

10. The CI advised that during the controlled purchase the CI got out of the vehicle and spoke with **HAROS**. The CI stated that during the conversation with **HAROS**, the CI observed what appeared to be a large quantity of a white rock like substance in between the front seats in plain view in **HAROS'** vehicle.

11. Immediately after the buy/walk, the surveillance and operation were terminated.

12. SAs Jones and Lara transported the suspected cocaine to the HSI Dallas Field Office for processing.

13. SA Jones conducted a presumptive test on the suspected narcotics that yielded positive for the presence of cocaine and weighed approximately 29.2 grams.

14. The suspected cocaine was placed in evidence in the HSI Dallas vault. The controlled purchase has been captured on a video recording device.

### Controlled Purchase of Cocaine #2 on April 15, 2021

15. On or about April 15, 2021, HSI, with the assistance of the FWPD Gang and Narcotics Units conducted a controlled purchase of 1 ounce of cocaine from **HAROS.**

16. On the same date, SA Jones and Task Force Officer (TFO) Eugenio Vela met the CI at a predetermined location to conduct a consensual recorded phone call to **HAROS,** xxx-xx-1720. Prior to making the consensual phone call, agents searched the CI's person and vehicle for contraband and/or weapons. The search was negative on both.

17. A few moments later, the CI was given a recording device and instructed to make a phone call to the target number xxx-xx-1720. The CI attempted to make two (2) additional consensually recorded phone calls to the target number and got negative results. A few minutes later, the CI was contacted by **HAROS** on cellular number xxx-xx-8455. The consensual phone call was overheard by the agents, as well as recorded. The CI told **HAROS** that his friend wanted to purchase one ounce of cocaine. **HAROS** said that he would meet the CI at the 3300 block of N. Grove Street, Fort Worth.

18. The CI advised that **HAROS** was driving an older model silver Nissan 350Z, Coupe with a temporary paper plate.

19. The CI stated that **HAROS** was conducting business at another car dealership/lot located at on N. Main Street, Fort Worth. FWPD Narcotics Officers conducted surveillance at this location and observed the silver Nissan 350Z in the parking lot

**Criminal Complaint – Page 3**

of the car lot. Officers established surveillance at this location to follow the vehicle.

20. At approximately 2:00p.m., the CI departed the predetermined location to meet with **HAROS**. A few moments later, FWPD officers observed **HAROS** get inside the Nissan 350Z and leave the Car Lot. A vehicle license registration check was conducted and revealed the vehicle was registered to an individual with the same address as the Car Plug.

21. FWPD officers followed **HAROS** until **HAROS** arrived at **HAROS'** residence. HSI agents were setup at that location and observed **HAROS** get out of his vehicle and go inside. A few minutes later, agents observed **HAROS** exit the residence and get inside the silver Nissan 350Z and drive away. FWPD officers continued mobile surveillance on **HAROS** until **HAROS** arrived at the meet location at 3300 block of N. Grove Street.

22. At approximately 2:30p.m., agents observed **HAROS** driving away from the meet location at a high rate of speed.

23. A few minutes later, agents followed the CI back to the predetermined location and retrieved a white rock like substance.

24. SA Jones and TFO Vela retrieved the contraband from the CI. The CI stated that **HAROS** wanted to meet the CI's friend. The CI stated that he asked **HAROS** that his friend wanted to purchase a firearm. The CI said that **HAROS** asked if the CI's friend wanted a rifle or a machine gun. The CI said that his friend wanted a machine gun. The CI said that **HAROS** said he was going to contact his supplier to see what they had. Agents recovered the recording device from the CI.

25. SA Jones conducted a presumptive test on the suspected narcotics that tested negative for the presence of cocaine and weighed approximately 28.27 grams.

26. The suspected cocaine was placed in the temporary vault as evidence in the HSI SAC office.

27. On April 16, 2021, agents retrieved the suspected cocaine from the HSI evidence vault and dropped it off at the DEA Lab for analysis.

28. The controlled purchase has been captured on a video recording device. and placed in video evidence.

## Controlled Purchase of Cocaine #3 on May 27, 2021

29. On or about May 27, 2021, HSI, with the assistance of the Fort Worth Police Department (FWPD) Gang Unit, FWPD Narcotics Units and the Drug Enforcement Administration (DEA) conducted a controlled purchase of one (1) ounce of cocaine from **HAROS**.

30. SA Sheldon Jones and TFO Eugenio Vela met a CI at a predetermined location to conduct a consensual recorded phone call to **HORAS** xxx-xx-1720. Prior to making the consensual phone call, agents searched CI's person and vehicle for contraband and/or weapons. The search was negative on both.

31. A few moments later, the CI was given a recording device and instructed to make a phone call to **HAROS** at xxx-xx-1720. The CI told **HAROS** that his friend wanted to purchase one (1) ounce of cocaine. **HAROS** said that it would be $1,300.00 for an ounce of cocaine. **HAROS** advised the CI that he could meet in a few minutes at the 3300 block of N. Grove Street, Fort Worth.

32. Agents conducted surveillance at **HAROS'** residence and a car lot. At the car lot, agents observed a Hispanic male, possibly **HAROS**, leaving the car lot in a silver Infiniti G35 with a paper license plate number. Agents/Officers followed the Infiniti and confirmed the vehicle was being driven by **HAROS**. The vehicle was followed until **HAROS** arrived at the 3300 block of N. Grove Street. The CI met with **HAROS** and the controlled purchase of cocaine was completed. A few moments later, **HAROS** was observed leaving the area eastbound on 32nd Street without incident.

33. SA Jones and TFO Vela followed the CI back to a predetermined location where the CI relinquished a clear bag of a white rock like substance suspected to be cocaine. The CI's person and vehicle were both searched for other contraband and weapons. The results were negative on both. The CI advised that during the meeting with **HAROS**, the CI got inside of **HAROS'** vehicle. The CI stated that **HAROS** gave him a small clear bag of a white rock like substance. The CI stated that another clear bag of the same substance was sitting in the center console of the vehicle in plain view. The CI stated after the meeting was concluded that **HAROS** drove away at a high rate of speed.

34. Agents/Officers followed **HAROS** back to **HAROS'** residence and the surveillance was terminated.

35. FWPD Officer H. Buendia collected, and field tested the suspected cocaine that yielded positive for the presence of cocaine. The cocaine was taken to the FWPD Evidence Room for safekeeping. The cocaine weighed 28.17 grams.

36. The controlled purchase has been captured on a video recording device.

37. On June 8, 2021, SAs conducted two federal search warrants at **HAROS'** residence on Neches Street and a used car lot on North Main Street where **HAROS** works. During a subsequent interview, **HAROS** admitted to trafficking approximately four kilograms of cocaine over the previous twelve months in the Fort Worth metropolitan area.

Based on the facts and information presented above, I submit there is probable cause to believe that **JOSE SANTOYO-HAROS** did willfully possess with intent to distribute Cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

_____
Sheldon Jones
Special Agent
Homeland Security Investigations

SWORN AND SUBSCRIBED before me, June **10**, 2021 at **1:35** am/**pm**, in Fort Worth, Texas.

_____
HAL R. RAY, JR.
UNITED STATES MAGISTRATE JUDGE